# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Department of Central Management Services/Department of Public Health v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110209

| | |
|---|---|
| Appellate Court Caption | THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES/DEPARTMENT OF PUBLIC HEALTH, Petitioners, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; JACALYN J. ZIMMERMAN, MICHAEL HADE, MICHAEL COLI, ALBERT WASHINGTON, and JESSICA KIMBROUGH, the Members of Said Board and Panel in Their Official Capacity Only; JOHN BROSNAN, Executive Director of Said Board in His Official Capacity Only; and THE AMERICAN FEDERATION OF STATE, COUNTY, and MUNICIPAL EMPLOYEES, COUNCIL 31, Respondents. |
| District & No. | Fourth District<br>Docket No. 4-11-0209 |
| Filed<br>Rehearing denied | November 30, 2012<br>December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A decision of the Illinois Labor Relations Board, State Panel, finding that three employees of the Department of Public Health classified as senior public administrators and referred to as regional supervisors were "employees" with the right to bargain collectively within the meaning of the Illinois Public Labor Relations Act was upheld, since the supervisors did not "direct" their subordinates by overseeing their work, conducting evaluations or making the work schedule, they did not devote any time exercising supervisory authority, and they were not "supervisors" for purposes of section 3(r) of the Act. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-RC-09-036. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Joseph M. Gagliardo and Lawrence Jay Weiner (argued), Special Assistant Attorneys General, of Chicago, for petitioners. |
| | Jacob Pomeranz (argued), of Cornfield & Feldman, of Chicago, for respondent American Federation of State, County and Municipal Employees. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board. |
| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion. Justice Knecht concurred in the judgment and opinion. Justice Cook dissented, with opinion. |

**OPINION**

¶ 1    On September 9, 2008, the American Federation of State, County and Municipal Employees, Council 31 (union), filed with the Illinois Labor Relations Board, State Panel (Board), a majority-interest petition to represent three regional supervisors employed by the Illinois Department of Public Health (Department) in the job title or classification of senior public administrator, option 8H. On September 7, 2010, after an administrative hearing conducted on February 2, 2010, the administrative law judge (ALJ), Sylvia Rios, issued a recommended decision and order granting the petition. On January 28, 2011, the Board decided the ALJ was correct and ordered the Board's Executive Director, John Brosnan, to certify the union as the exclusive representative of the three petitioned-for regional supervisors. On February 3, 2011, Brosnan issued a certification of representation, stating that the three senior public administrators, option 8H, were within the existing bargaining unit designated as RC-63.

¶ 2    The Department appeals on the ground that the petitioned-for individuals were supervisory employees within the meaning of section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2008)). We find no clear error in the Board's decision that the individuals at issue were "employees" with the right to bargain collectively. See 5 ILCS 315/3(n) (West 2008). Therefore, we affirm the Board's decision.

¶ 3                                I. BACKGROUND

¶ 4        Three regional supervisors, John Smet of Peoria, Clayton Simonson of Rockford, and Mary Lynne Williams of Edwardsville, are employed by the Department in the division of environmental health. Each has the job title or classification of senior public administrator and each is responsible for the inspection of and ensuring the safety of public places such as swimming pools, beaches, and other facilities. The union filed a petition with the Board to represent these three individuals. However, the Department contends they should not be included in the union because they are supervisory employees as defined in the Act. The union contends they are not supervisory employees because they do not "meaningfully with independent judgment impact the terms and conditions of their subordinates."

¶ 5        On February 2, 2010, the ALJ conducted a hearing and considered the testimony of David Culp, the deputy director of the Department's office of health protection. He oversees four divisions, one of which is the division of environmental health. The division chief, Ken Runkle, reports to Culp at a minimum of twice weekly. The division, under Runkle, consists of seven regional supervisors, three of whom are the employees at issue. Culp testified he was aware that some regional supervisors under Runkle were in the union though he could not provide specifics on how such a decision was made. Culp further testified that the duties of the regional supervisors can be classified as a "50/50 proposition," with half of his or her time spent in the field doing "hands-on work," and the other half spent "supervising, ensur[ing] work assignments[,] and ensuring that those personnel are completing the work needed to be done."

¶ 6        The ALJ also considered the testimony of Runkle, who was the acting division chief, as well as the division's senior toxicologist. His base title was public service administrator, option 4, and his acting title was senior public service administrator, option 8H. He said he was a member of the union. Runkle generally communicates with the regional supervisors weekly by e-mail or telephone, with "intense programmatic meetings" conducted quarterly.

¶ 7        The regional supervisors have several employees working under them. (Simonson has 6 subordinate employees, Smet has 11, and Williams has 9.) Each regional supervisor completes an annual performance evaluation for each subordinate employee. Each evaluation consists of four sections: (1) appraisal of objectives, (2) general appraisal of employee performance, (3) remarks by supervisor, and (4) employee objectives for next reporting period. The regional supervisor (1) prepares the objectives, (2) determines whether each objective was met, (3) completes the general appraisal of the employee's performance by indicating whether he or she exceeds expectations, meets expectations, or needs improvement in the areas indicated, and (4) devises, with the assistance of the employee, the objectives for the next reporting period.

¶ 8        Runkle testified he reviews the regional supervisors' employee evaluations before he signs them, but generally does not overrule an entry. He looks only for "red flags." He said there are situations where the regional supervisor is not the immediate supervisor of an employee, so the regional supervisor does not conduct the evaluation, but must sign off on it as the next highest supervisor. On that occasion, the regional supervisor has the authority

to overrule the evaluation. Each evaluation is signed by the employee, the immediate supervisor, the next highest supervisor, and Damon T. Arnold, the Director of the Department. Theoretically, a negative evaluation could be used to begin or continue disciplinary proceedings. However, an evaluation does not affect the employee's pay since each employee is a member of the union.

¶ 9 Runkle further testified that if an employee applies for a four-day workweek, the regional supervisor is the one to decide whether that request is approved, as he or she "knows best the work that needs to be done and the most efficient way for it to be done." The regional supervisor is also the "final decision-maker" on an employee's request for time off, utilizing his or her judgment. However, the Department's personnel staff gives supervisors directives regarding what conditions qualify for approving certain time-off requests. Other than those directives, the regional supervisor makes the decision based on "coverage," meaning the supervisor will determine if he has enough employees to cover the demand for the requested time off.

¶ 10 According to Runkle, if an employee requires discipline, the regional supervisor will consult with his supervisors and the personnel department. Only one disciplinary action had been initiated in the 13 months prior to the hearing. It consisted of a written reprimand issued by the regional supervisor after consultation with superiors. Runkle did not know what role the regional supervisors played in the process of promoting employees. He testified on cross-examination that an employee's request for a four-day work schedule would not be implemented until the request received final approval from the director's office.

¶ 11 After considering the parties' posthearing briefs, the ALJ entered a recommended decision and order, finding the petitioned-for employees were not supervisors within the meaning of section 3(r) of the Act (5 ILCS 315/3(r) (West 2008)). The ALJ recommended granting the union's petition. The Board agreed.

¶ 12 II. ANALYSIS

¶ 13 A. Standards of Review

¶ 14 The Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2008)) governs the judicial review of a decision by the Board certifying a labor organization as the exclusive bargaining representative of a group of employees. 5 ILCS 315/9(i) (West 2008); *County of Cook v. Illinois Labor Relations Board-Local Panel*, 351 Ill. App. 3d 379, 385 (2004). According to section 3-110 of the Administrative Review Law, our "hearing and determination shall extend to all questions of law and fact presented by the entire record." 735 ILCS 5/3-110 (West 2008).

¶ 15 Our standard of review depends on the nature of the question we are considering. If the question is one purely of fact, we deem the Board's resolution of that question to be "prima facie true and correct." 735 ILCS 5/3-110 (West 2008). The statutory phrase "prima facie true and correct" means that we uphold the factual finding unless it is against the manifest weight of the evidence. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). A factual finding is against the manifest weight of the evidence only if a proposition opposite to that finding is clearly apparent from the evidence

or only if the finding is unreasonable, arbitrary, or not based on evidence. *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 16     If the question, by contrast, is one purely of law, we give no deference at all to the Board unless it resolved a genuine ambiguity in a statute or regulation that it was charged with administering (see *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 656 (2005)). We decide legal questions *de novo*. *Carpetland*, 201 Ill. 2d at 369; *City of St. Charles v. Illinois Labor Relations Board*, 395 Ill. App. 3d 507, 509 (2009).

¶ 17     As in this case, sometimes a question does not fall entirely into the category of either fact or law but instead is a question of both fact and law, a question of what is " 'the legal effect of a given set of facts.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001) (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998)). A hybrid question of fact and law "is one 'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' " *AFM*, 198 Ill. 2d at 391 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). When reviewing an administrative agency's resolution of a hybrid question of fact and law, we apply an intermediate standard of review, a standard in between manifest weight and *de novo*. *AFM*, 198 Ill. 2d at 392. We give some deference to the agency's decision but not as much deference as we would give if the question were one purely of fact. *AFM*, 198 Ill. 2d at 392. We give this diminished amount of deference by asking whether the agency's decision is clearly erroneous. *AFM*, 198 Ill. 2d at 392. A finding is clearly erroneous if, despite the existence of some evidence to support the finding, the evidence in its entirety leaves the reviewing court with the definite and firm conviction that the finding is a mistake. *AFM*, 198 Ill. 2d at 393. Again, in this context, the finding is that the undisputed facts do or do not satisfy the statutory standard, the meaning of which likewise is undisputed. *AFM*, 198 Ill. 2d at 391. If there could be two reasonable but opposing views of whether the facts satisfy the statutory standard, the agency cannot have committed clear error by choosing between those views. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

¶ 18                         B. Supervisory Status as a Matter of Law

¶ 19     "In order to ensure that a pro-union bias will not impair a supervisor's ability to apply the employer's policies to subordinates in accordance with the employer's best interests, the Act provides that a bargaining unit may not contain both supervisors and nonsupervisors." *Department of Central Management Services v. Illinois State Labor Relations Board*, 278 Ill. App. 3d 79, 83 (1996). Section 3(r) defines a "supervisor" as follows:

" 'Supervisor' is an employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment,

-5-

the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority, State supervisors notwithstanding." 5 ILCS 315/3(r) (West 2008).

Thus, under section 3(r), an individual is a supervisor if all three of these propositions are true: (1) the individual has principal work substantially different from that of his or her subordinates; (2) the individual has authority on the employer's behalf to perform at least 1 of the 11 indicia of supervisory authority–*i.e.*, hiring, transferring, suspending, laying off, recalling, promoting, discharging, directing, rewarding, or disciplining employees or adjusting their grievances–or to effectively recommend any of those actions, and the individual consistently uses independent judgment in exercising such authority; and (3) the individual spends a preponderance of his or her time in the job performing supervisory tasks. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 512 (1990).

¶ 20 The ALJ and the Board found that all of the regional supervisors performed principal work that was "obviously and visibly different from that of their subordinates." Therefore, the only elements of supervisory status that are at issue in this appeal are the second and third ones.

¶ 21 1. *Indicia of Supervisory Authority*

¶ 22 As the party seeking to exclude the regional supervisors from the union, the Department had the burden of proving, by a preponderance of the evidence, that they were "supervisors." See *Department of Central Management Services v. Illinois Labor Relations Board*, 382 Ill. App. 3d 208, 220-21 (2008). To carry that burden, the Department had to prove the regional supervisors had the authority to perform 1 or more of the 11 supervisory functions listed in section 3(r), while exercising independent judgment in performing these functions. An employee uses independent judgment whenever he or she must choose between two or more significant courses of action. See *Freeport*, 135 Ill. 2d at 521.

¶ 23 The Board found the regional supervisors did not have the authority to discipline, direct, or promote the employees using the required independent judgment. The Department challenges the findings related to the two functions of disciplining and directing employees, claiming the regional supervisors perform at least one of these tasks with independent judgment.

¶ 24 a. Disciplining Employees

¶ 25 At the hearing, the Department presented evidence, via the testimony of Runkle and the introduction of a memorandum referencing a written reprimand to one division employee, that the division had only one disciplinary action in the 13 months immediately preceding the hearing. Runkle testified the decision to issue this written reprimand was made jointly between him and the regional supervisor, only after consultation with and approval from the offices of the deputy director and personnel. It was apparent from his testimony that disciplinary decisions are reached as a collaborative effort among several levels of supervisors and the personnel office. The Department did not present evidence of who initiates disciplinary proceedings, how such proceedings are conducted, and the precise role

the regional supervisor plays in the proceedings. Thus, the fact that this one particular disciplinary proceeding was part of a collaborative effort among several levels of supervisors suggests that disciplinary decisions are not functions performed by the regional supervisors at the required level of independent judgment. That is, it does not appear the regional supervisors have the authority to choose between two or more significant courses of action when disciplining a subordinate employee becomes an issue.

¶ 26                                b. Directing Employees

¶ 27        The Department contends the regional supervisors "direct" their employees, as demonstrated by the evidence presented at the hearing, by conducting annual performance evaluations, final probationary evaluations, processing work-schedule requests, and considering time-off requests. To "direct" employees within the meaning of the Act, supervisors must have the authority to affect the employees' terms and conditions of employment. *Department of Central Management Services*, 382 Ill. App. 3d at 224. Overseeing functions in areas likely to fall within the scope of union representation, such as wages, discipline, transfer, promotion, hiring, or other working conditions, is insufficient to constitute supervisory "direction" within the meaning of the Act.

¶ 28        According to the binding precedent set forth in *Department of Central Management Services*, 382 Ill. App. 3d at 224, the employer maintained that telecommunications supervisors were supervisors within the meaning of section 3(r) (5 ILCS 315/3(r) (West 2006)) because they directed their subordinates in seven ways: (1) monitoring and correcting their performance, (2) establishing work schedules, (3) assigning work, (4) determining the need for overtime, (5) granting leave and imposing proof status, (6) training employees, and (7) evaluating their performance. We responded:

> "It is not enough, however, merely to point out these functions of direction; 'the alleged supervisor must have *both* the authority to make operational decisions *and* exercise significant discretionary authority that impacts his subordinates' employment status in areas most likely to fall within their terms and conditions of employment' (emphases added) (*State of Illinois, Department of Central Management Services*, 21 Pub. Employee Rep. (Ill.) par. 46, at 216, No. S-RC-04-038 (Illinois Labor Board, State Panel, March 25, 2005)). As an ALJ explained in a recommended decision with which the Board agreed:
>
>> 'The authority to direct involves functions relating to overseeing an employer's operations or which indicate responsibility for the performance of a subordinate's work. [Citations.] These functions include reviewing and monitoring work activities, instructions on how work is to be performed, scheduling work hours, assigning work, and approving requests for leave or overtime[,] and completing performance evaluations. [Citations.] The Board has also previously held that these and any other function of direction are not supervisory direction absent evidence that the alleged supervisor possesses significant discretion to affect or impact the[ ] subordinates['] employment in areas likely to fall within the scope of union representation, such as wages, discipline, transfer, promotion, hir[ing,] or other working conditions.' *Service*

*Employees International Union, Local 73-HC*, 19 Pub. Employee Rep. (Ill.) par. 58, at 265, No. L-RC-02-014 (Illinois Labor Board, Local Panel, April 15, 2003).

See also *City of Sparta*, 9 Pub. Employee Rep. (Ill.) par. 2029, at X-150, No. S-RC-92-100 (Illinois State Labor Relations Board, June 21, 1993). The reasoning is that 'absent such discretionary authority, an individual's responsibility to direct subordinates in the performance of their job duties does not conflict with his membership in a bargaining unit.' *City of Bloomington*, 13 Pub. Employee Rep. (Ill.) par. 2041, at X-236, No. S-UC-97-30 (Illinois State Labor Relations Board, August 25, 1997)." *Department of Central Management Services*, 382 Ill. App. 3d at 224-25.

¶ 29    Here, the Board concluded that such general oversight was basically the function of the regional supervisors and that they did not actually have significant discretionary authority to affect or impact a subordinate employee's status of employment. The annual evaluations and final probationary evaluations were subject to "several levels of review." Indeed, the regional supervisors filled out the evaluations, but the evaluations were not completed until they received final approval from higher-ranking supervisors. The Department did not present evidence that the regional supervisors exercised any significant authority in determining consequences from a poor annual evaluation or in determining whether a probationary employee becomes a certified employee.

¶ 30    The same can be said for the regional supervisors' role related to subordinate employees' schedules. Apparently, independent judgment is not utilized to decide whether an employee's request for a four-day workweek or time off is granted. Runkle testified that the personnel office provides the division with guidelines that should be used to determine whether an employee's time-off request should be approved or denied. Likewise, the deputy director provides guidelines for the lower-level supervisors to determine an employee's work schedule. That is, the regional supervisor does not possess the supervisory authority to make such an independent judgment, as the decision is subject to final approval from the director. The regional supervisors may make recommendations in these areas, but in order to qualify as a supervisory function under the Act, those recommendations " 'must be adopted as a matter of course, without independent review.' " *Department of Central Management Services*, 382 Ill. App. 3d at 225 (quoting *International Union of Operating Engineers, Local No. 150*, 23 PERI ¶ 130, at 561 (ILRB State Panel 2007)).

¶ 31    Section 3(r) provides that a supervisor must perform at least 1 of the 11 functions "or to effectively recommend any of those actions." 5 ILCS 315/3(r) (West 2008). As the Department explains in its brief, a recommendation is "effective" within the meaning of section 3(r) only if the superiors adopt it as a matter of course. *Department of Central Management Services*, 382 Ill. App. 3d at 229. The Board could reasonably have found insufficient proof that the regional supervisors' recommendations regarding a subordinate employee's discipline, work schedule, annual evaluation, or final probationary evaluation were effective recommendations. Just because the Department accepted the regional supervisors' recommendations on these topics in the exhibits provided, it does not necessarily follow that the Department accepted his or her recommendations as a matter of course. The evidence simply did not demonstrate the regional supervisors possess the authority to exercise the independent judgment as required under the Act.

¶ 32    We adhere to our reasoning in *Department of Central Management Services* and conclude that, absent significant discretion to affect their subordinates' employment in areas likely to fall within the scope of union representation, such as wages, discipline, transfer, promotion, hiring, or other working conditions, the regional supervisors do not "direct" their subordinates, within the meaning of section 3(r), by overseeing their work, conducting evaluations, and making the work schedule.

¶ 33                            c. Preponderance of Time Factor

¶ 34    Finally, the Act requires that a "supervisor" devote a preponderance of his or her work time exercising his or her supervisory authority. Because we agree with the Board's finding on each of the above factors, that the regional supervisors are not "supervisors" within the meaning of section 3(r), we agree they do not devote *any* of their time exercising their supervisory authority. There can be no analysis regarding the amount of time spent performing supervisory functions unless there is first a determination that we have before us a "supervisor" within the meaning of the Act. This is not such a case.

¶ 35                            III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the Board's decision.

¶ 37    Affirmed.

¶ 38    JUSTICE COOK, dissenting.

¶ 39    Ken Runkle, the division chief of the division of environmental health, oversees seven regional offices headed by senior public service administrators, regions including Rockford, Edwardsville, and Peoria. The testimony in this case focused on the Peoria region, headed by John Smet. Smet has 11 subordinates. Dr. David Culp, the Deputy Director of the office of health protection, testified that "[Runkle] of course cannot supervise close to a hundred personnel himself, so he then depends on those section chiefs. So he depends on the regional supervisors out at the various regional offices to supervise the people at those regional offices." "So it is only up to the regional supervisor to ensure, quote, the work gets done." Smet completes his subordinates' performance evaluations as he sees fit and ranks the employee as he deems appropriate. Smet does not consult Runkle before filling out his subordinates' performance evaluations. Runkle could not recall having ever vetoed, overruled, or sent back a single performance evaluation received from Smet. Smet has the authority to discipline subordinates, and Smet issued a written reprimand once during Runkle's 13-month tenure, after contacting Runkle prior to issuing the reprimand.

¶ 40    Section 3(r) lays out three requirements for a "supervisor." First, his or her "principal work is substantially different from that of his or her subordinates." 5 ILCS 315/3(r) (West 2008). Second, he or she must have authority to do such things as suspend, lay off, direct, reward or discipline employees "or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the

consistent use of independent judgment." 5 ILCS 315/3(r) (West 2008). "[O]nly one indicium of supervisory authority accompanied by independent judgment is sufficient to indicate supervisory status ***." *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 516, 607 N.E.2d 182, 186 (1992). Third, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising that authority. 5 ILCS 315/3(r) (West 2008).

¶ 41    The ALJ found that "[i]n this case, the record demonstrates that the work of the petitioned-for employees is obviously and visibly different from that of their subordinates. There is evidence in the record that the Regional Managers must address time-off requests, complete annual performance evaluations, review final probationary evaluations, answer work schedule change requests, issue disciplinary documents and sign off on personnel transaction requests." The ALJ decided the case on the second requirement, authority to direct and discipline, *et cetera*, and did not reach the third requirement, the preponderance requirement. The Supreme Court has defined "preponderance" as follows: "the most significant allotment of the employee's time must be spent exercising supervisory functions. [Citation.] In other words, the employee must spend more time on supervisory functions than on any one nonsupervisory function." *City of Freeport*, 135 Ill. 2d at 532, 554 N.E.2d at 171. If the second requirement is met here, it seems clear that the third requirement has also been met.

¶ 42    The ALJ found it significant that "[t]here has been only one disciplinary action against a Division employee in the thirteen months prior to the hearing." That emphasis is mistaken, "because it improperly assigns dispositive weight to the number of times the [supervisors] have exercised their supervisory authority." *Village of Maryville v. Illinois Labor Relations Board, State Panel*, 402 Ill. App. 3d 369, 374-75, 932 N.E.2d 558, 563-64 (2010). "The potential for a conflict of interest lies in the supervisor's *authority* to influence or control personnel decisions in areas most likely to affect the employment of subordinates and, thus, most likely to fall within the scope of union representation." (Emphasis in original.) *City of Freeport*, 135 Ill. 2d at 518, 554 N.E.2d at 164. "[I]t is the existence of the supervisory authority *** that is essential, not the amount of time such authority is exercised." *City of Peru v. Illinois State Labor Relations Board*, 167 Ill. App. 3d 284, 292, 521 N.E.2d 108, 114 (1988). A good supervisor, who makes it clear what is expected of employees, may rarely be forced to resort to disciplinary actions.

¶ 43    The ALJ found it significant that Smet had contacted Runkle before issuing the written reprimand. We have previously rejected that criticism:

    "The Board's decision in this respect, however, is yet another example of its improper view that the term 'independent judgment' means that employees cannot involve anyone else in their disciplinary decision-making process.

    Here, the Board again ignores the third option of the second prong of the Act's definition of a supervisor. That is, if employees, such as these section managers, effectively recommend such discipline with independent judgment, that is sufficient to meet the Act's definition of a supervisor." *Department of Central Management Services*

*v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 090966, ¶¶ 208, 209, 959 N.E.2d 114.

As Culp testified, Runkle cannot supervise close to 100 personnel himself, particularly when they are scattered at various locations around the State, locations which Runkle rarely visits. The section chiefs are the only supervisors familiar with the employees and the only supervisors able to effectively direct employees or effectively recommend discipline.

¶ 44 This court was critical of AFSCME's position in our 2011 case: only "the Governor and his policy team" would be excluded from the tens of thousands of State executive branch employees subject to collective bargaining under the Act. *Department of Central Management Services*, 2011 IL App (4th) 090966, ¶ 224, 959 N.E.2d 114. I agreed with that criticism in our 2008 case: "In this case, as in *Freeport*, if the telecommunications supervisors are not statutory 'supervisors,' the telecommunications centers operate 'entirely without supervision a large part of the time.' " *Department of Central Management Services*, 382 Ill. App. 3d at 231, 888 N.E.2d at 583 (Cook, J., dissenting). I continue to believe that our 2008 decision was wrongfully decided and should not be followed in this case. I would reverse the Board's decision.