# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Service Employees International Union, Local 73 v. Illinois Labor Relations Board, Local Panel, 2013 IL App (1st) 120279**

---

| | |
|---|---|
| Appellate Court Caption | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73, Petitioner, v. ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL, and CITY OF CHICAGO, Respondents. |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-0279 |
| Filed | June 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A representation-certification petition with respect to supervising investigators for a city's "Independent Police Review Authority" was properly denied by the Illinois Labor Relations Board on the ground that the investigators were supervisors for purposes of the Illinois Public Labor Relations Act, since the supervising investigators employ independent judgment in their predominant tasks of assigning and monitoring work, they have authority to approve days off, their authority affects subordinates' employment in areas within the scope of union representation, including evaluations, discipline and grievances, and under the circumstances, the Board's decision was not clearly erroneous. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, Local Panel, No. L-RC-11-006. |
| Judgment | Affirmed. |

Counsel on
Appeal

Susan Matta, of Service Employees International Union, Local 73, of Chicago, for petitioner.

Stephen Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for respondents.

Panel

JUSTICE REYES delivered the judgment of the court, with opinion.

Presiding Justice Lampkin and Justice Gordon concurred in the judgment and opinion.

## OPINION

¶ 1      Petitioner, Service Employees International Union, Local 73 (Union), brings this action for direct review of a decision by the Illinois Labor Relations Board, Local Panel (Board), denying the representation-certification petition brought by the Union to represent supervising investigators employed by the City of Chicago's (City) "Independent Police Review Authority" (IPRA). The Board rejected the administrative law judge's (ALJ) recommendation, concluding the supervising investigators were supervisors within the meaning of section 3(r) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/3(r) (West 2010)). On appeal, the Union contends there are no indicia of supervisory authority in this case, in particular that supervising investigators do not "direct" employees within the meaning of the Act. For the following reasons, we conclude the Board's decision was not clearly erroneous.

¶ 2                     BACKGROUND

¶ 3      The record on appeal discloses the following facts. In October 2010, the Union filed a representation-certification petition[1] with the Board, seeking to become the exclusive bargaining representative of a bargaining unit of approximately 11 employees described as "[a]ll full-time and regular part-time Supervising Investigators" employed by IPRA. In November 2010, IPRA requested a hearing on the petition and submitted an offer of proof. IPRA argued in part its supervising investigators were excluded from the proposed bargaining unit based on their supervisory status under the Act. IPRA also noted the potential for fragmentation, as the Union also represents public safety employees who would likely

---

[1]The petition in this case was a "majority interest" petition, stating that a majority of the employees in an appropriate unit wished to be represented by the Union for the purposes of collective bargaining.

be subject to IPRA investigations. After reviewing the offer of proof, the ALJ decided there was reasonable cause to believe unresolved issues concerning representation required a hearing on the petition.

¶ 4    On January 12, 2011, the ALJ held a hearing on the Union's petition. Ilana Rosenzweig, IPRA's chief administrator, testified for IPRA, while two supervising investigators, Paula Tillman and Nathaniel Freeman, testified on behalf of the Union. Both parties also presented documentary evidence at the hearing.

¶ 5                                    The Organization of IPRA

¶ 6    Rosenzweig testified that IPRA, formerly known as the "Office of Professional Standards," became an independent agency of the City in 2007. IPRA's mission is to receive and investigate allegations of misconduct by members of the Chicago police department (CPD), including claims of excessive force, domestic violence, coercion through threats of violence, and verbal abuse based on bias. IPRA also investigates cases involving police discharge of firearms or Tasers, as well as incidents of serious injury, attempted suicide, and death in police custody.

¶ 7    According to Rosenzweig, IPRA has approximately 90 employees, over 70 of whom are already represented in collective bargaining matters by the American Federation of State, County and Municipal Employees, Council 31 (AFSCME). Rosenzweig explained an IPRA organizational chart showing the agency's investigators are divided into 11 teams, each consisting of a supervising investigator, three to five employees in the classifications of investigator I, II or III (representing increasing levels of experience) and intake aide. One supervising investigator oversees the administrative staff. One team, designated as "rapid intake," handles cases for the first 24 to 48 hours following a complaint, collecting any time-sensitive evidence.

¶ 8    Rosenzweig also testified that IPRA is staffed from 7 a.m. to 11 p.m., but employees are also on call for the "Major Incident Response Team" (MIRT), which responds to shootings and other serious incidents occurring overnight. Each supervising investigator is assigned to MIRT in a 12-week rotation. MIRT must respond to all officer-involved shootings, but an immediate response may fall within the discretion of the supervising investigator in other cases.

¶ 9                          The Assignment and Process of IPRA Investigations

¶ 10   Rosenzweig testified supervising investigators do not conduct investigations themselves. When a team receives a case, the supervising investigator assigns it to an investigator, based on factors including: balancing the workload among team members; the type of investigation involved; the experience of the investigators; and developing skills of the investigators on the team. The supervising investigator then monitors the investigation, responds to questions from the investigator, and makes decisions regarding whether various tasks need to be undertaken. Supervising investigators also set deadlines and priorities regarding the investigations.

¶ 11      For example, according to Rosenzweig, to proceed on an investigation, an investigator generally must obtain an affidavit from someone who personally witnessed the incident. Approximately half of IPRA complaints are closed because the investigator is unable to obtain a witness affidavit. The supervising investigator decides whether the investigator put forth sufficient effort to obtain the affidavit. A supervising investigator's decision to close a file in these cases generally is not reviewed by a superior.

¶ 12      In those cases where the investigator obtains a witness affidavit or similar evidence, the supervising investigator may provide guidance to the investigator regarding potential witnesses and ensure the collection of the appropriate physical evidence, video evidence, police reports, medical records, police communications, GPS data from police vehicles, computer records and photographs. Several supervising investigators developed a case checklist to assist investigators in gathering these types of evidence. A supervising investigator also ensures that relevant physical evidence is inventoried and subjected to forensic testing when necessary.

¶ 13      Rosenzweig testified supervising investigators provide their investigators with feedback and written notes during an investigation, identifying issues an investigator needs to address. Supervising investigators also ensure investigators follow through in obtaining supplemental police reports, forensic test results and any information ordered from the CPD. In addition, Rosenzweig testified supervising investigators work with their investigators to determine whether a police officer must be interviewed or provide a written statement. Supervising investigators also oversee the investigators' drafting of potential charges for rule violations.

¶ 14      According to Rosenzweig, when an investigation is complete, investigators make an initial recommendation of whether the finding should be "sustained, not sustained, unfounded, [or] exonerated." Each case is then reviewed by the supervising investigator. If the investigator approves of a finding other than "sustained," the investigation is closed at the IPRA and the recommendation is sent to the CPD.

¶ 15      Rosenzweig also testified, however, when a supervising investigator approves a finding of "sustained," the supervising investigator will recommend the amount of discipline to be imposed. The supervising investigator's recommendation in sustained cases is reviewed by a deputy chief at the IPRA, and ultimately by Rosenzweig. Supervising investigators approve a finding of "sustained" in approximately 3% of the cases, but Rosenzweig did not specify the percentage of sustained cases in which the supervising investigator's recommendation is upheld.

¶ 16      Rosenzweig testified that when a final investigative report is drafted, the supervising investigator edits it for grammar, spelling, and analysis, and may return the report to the investigator for changes. In signing off to close an investigation, the supervising investigator attests he or she directed the investigator to do everything necessary for the investigation, and attests everything was done or explains why no further investigation was necessary.

¶ 17      Rosenzweig estimated supervising investigators spend 95.5% of their time assigning and supervising cases. According to Rosenzweig, supervising investigators spend the remaining 4.5% of their time on performance evaluations, discipline, adjusting grievances, office meetings and approving employee requests for time off.

¶ 18    Tillman, who appeared on behalf of the Union, testified she typically spends the first week of each month conducting case reviews with her team and meeting with any remaining investigators during the second week of the month. During the third week, Tillman meets with investigators regarding closing cases. During the remainder of the month, Tillman reads cases and submits them for closing. Tillman further testified that she does her administrative work between meetings with investigators.

¶ 19    Freeman, also appearing on behalf of the Union, testified that cases where the supervising investigator and investigator disagree on a finding are subject to review by superiors, including Rosenzweig. Freeman also testified supervising investigators rarely have to tell investigators to gather more evidence on a case. Freeman added investigators are required to know the steps to close an investigation without active input from their supervisor.

¶ 20    Freeman estimated he spent approximately 50% of his time reviewing cases, proof-reading reports, ensuring the case reports are complete and discussing the reports with the investigators. Freeman ensures all of the proper investigatory steps have been taken and that the investigator's findings match the facts developed in the investigation. Freeman also estimated that of the time spent reviewing cases, 70% of that time was spent reading files and 30% was spent in discussions with investigators. Freeman further estimated spending 35% of his time overall approving documents such as interview summaries, 5% to 10% of his time giving guidance to investigators, and 5% to 10% of his time on administrative tasks and meetings.

¶ 21                    Performance Evaluations of IPRA Investigators

¶ 22    Rosenzweig testified supervising investigators conduct performance evaluations for their investigators every six months. Supervising investigators may receive guidance in drafting the details of evaluations, but Rosenzweig has never rejected a supervising investigator's performance evaluation. An investigator rated "excellent" or "good" may expect to receive a 3% step salary increase, while those rated "marginal" or "unsatisfactory" will not receive a raise. In addition, the AFSCME collective bargaining agreement requires that performance evaluations be considered when an employee applies for a promotion. Furthermore, according to Rosenzweig, supervising investigators as a group rate probationary employees, deciding whether those employees will be retained or let go.

¶ 23    In contrast, Tillman and Freeman testified they had no authority to hire, transfer, lay off or promote investigators. Freeman also testified supervising investigators were instructed to draft performance evaluations for review by the administration.

¶ 24                    The Discipline of IPRA Investigators

¶ 25    Rosenzweig testified supervising investigators have the authority to discipline their investigators and staff. Supervising investigators may choose to give nondisciplinary oral counseling, an oral reprimand (which is documented in writing), or a written reprimand or suspend an employee. Rosenzweig identified a variety of notices of progressive discipline previously imposed by supervising investigators as examples. According to Rosenzweig, these decisions are generally final and unreviewable. Rosenzweig rarely offers input on

discipline, typically when requested to do so by a supervising investigator.

¶ 26    Tillman and Freeman testified they would not impose any level of discipline on an employee without consulting a superior. Tillman testified that supervising investigators are told during their training that they should discuss any potential discipline with upper-level management. Tillman and Freeman testified that where a supervising investigator does not provide adequate discipline, the supervising investigator's superiors will intervene. Tillman testified that she has never issued an oral or written reprimand or a suspension because she believed she lacked authority to do so without consultation with superiors.

¶ 27    Upon further questioning, Rosenzweig confirmed that a handout describing the City's progressive discipline process recommends consultation on discipline. Rosenzweig also testified that she had intervened in disciplinary matters only twice out of a "couple dozen" cases she could recall.


¶ 28                                The Grievance Process at IPRA

¶ 29    Rosenzweig further testified supervising investigators hear and provide responses at the first step in the employees' grievance process. In April 2008, Rosenzweig sent an email to supervising investigators instructing them to provide grievances to the IPRA's director of administration, Katherine Martinez, who would oversee the process. Thereafter, a January 2010 grievance response carried the signatures of both a supervising investigator and Martinez. Responses from April and May 2010, however, bore only the signatures of the supervising investigators and did not include Martinez's signature.

¶ 30    Freeman testified he never responded to a grievance and was not trained to respond to them. Tillman testified she never responded to a grievance and was not trained to respond to them at this office.


¶ 31                                Scheduling Work at IPRA

¶ 32    Rosenzweig testified that scheduling of annual vacations requires approval from IPRA's deputy chief, but supervising investigators had authority to grant a vacation day, as opposed to the longer annual vacations. According to Rosenzweig, supervising investigators have the authority to approve overtime, but must keep their superiors "in the loop" to monitor what is happening on an officewide level. On August 24, 2009, an email from Rosenzweig discussing the compensatory time policy stated any authorization for compensatory time required prior approval by both the immediate supervisor and a deputy or coordinator. On December 29, 2010, in an email to IPRA investigators and supervisors, Rosenzweig stated that overtime and compensatory time were subject to the "[a]pproval of your superior at their discretion." Rosenzweig also testified supervising investigators have the authority to allow investigators to switch their regular day off.

¶ 33    Tillman testified she lacked authority to grant overtime. According to Tillman, she would sign off on requests and submit them to the deputy chief, who would check a box on the form approving or disapproving the request. Freeman denied he had independent authority to grant sick leave or vacations. Freeman similarly denied he had authority to approve any overtime

request.

¶ 34                                    The ALJ and Board Decisions

¶ 35        On September 27, 2011, the ALJ issued his recommended decision and order. The ALJ found Rosenzweig's testimony generally reliable and credible, noting in particular her testimony regarding case assignment was corroborated by one of the Union's witnesses. The ALJ concluded supervising investigators' work was different from the work of the investigators. The ALJ found supervising investigators retain and exercise discretion in the reporting of misconduct and recommendation of discipline. The ALJ found supervising investigators have the authority to process grievances and reward subordinate employees for their performance. The ALJ found, however, that the instructions issued by supervising investigators did not rise to the level of "direction" under the Act, because investigators were free to appeal their disagreements with supervising investigators to superiors at IPRA. Accordingly, the ALJ concluded supervising investigators were not engaged in supervisory functions a preponderance of the time. The ALJ also concluded supervising investigators did not have managerial status under the Act, as they did not implement sufficiently broad policy determinations. Lastly, the ALJ rejected the argument that the Union's proposed bargaining unit would result in improper fragmentation of the employees' bargaining strength. Thus, the ALJ ordered the Union be certified as the exclusive representative of the employees of the proposed unit.

¶ 36        On October 12, 2011, the City filed objections to the ALJ's recommended decision and order with the Board, as well as a brief in support of the exceptions. On October 21, 2011, the Union filed its response to the City's objections, as well as its own cross-objections to the ALJ's recommended decision and order.

¶ 37        On December 23, 2011, the Board issued its written decision and order. The Board agreed with the ALJ's determination that the supervising investigators met the first three elements of supervisory status under the Act, insofar as they perform work substantially different from their subordinates, they discipline, resolve grievances, and reward subordinates, and exercise independent judgment in doing so. The Board, however, found that the supervising investigators spent most of their time reviewing reports and giving instructions that went unchallenged in the vast majority of cases. Thus, the Board disagreed with the ALJ's finding that the supervising investigators do not "direct" within the meaning of the Act and found the supervising investigators spend a preponderance of their time performing supervisory tasks. Accordingly, the Board dismissed the Union's petition.

¶ 38        On January 26, 2012, the Union filed a timely petition for direct administrative review by this court, pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994), and section 9(i) of the Act (5 ILCS 315/9(i) (West 2010)).


¶ 39                                             DISCUSSION

¶ 40        On appeal, the Union contends the Board erred in finding the supervising investigators are supervisory employees within the meaning of section 3(r) of the Act (5 ILCS 315/3(r) (West 2010)). The Union also contends the supervising investigators are not managerial

employees within the meaning of section 3(j) of the Act (5 ILCS 315/3(j) (West 2010)). Our disposition of this appeal only requires a consideration of the Board's primary contention.

¶ 41                    The Standard of Review

¶ 42    The Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2010)) governs the judicial review of a decision by the Board to dismiss a certification petition. 5 ILCS 315/9(i) (West 2010).[2] Accordingly, our "hearing and determination shall extend to all questions of law and fact presented by the entire record." 735 ILCS 5/3-110 (West 2010). "The applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005).

¶ 43    The Board's findings of fact are "held to be prima facie true and correct" (735 ILCS 5/3-110 (West 2010)) and will be disturbed on review only if they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). The Board's findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008) (citing *City of Belvidere*, 181 Ill. 2d at 204).

¶ 44    The Board's conclusions of law are reviewed *de novo*. *Cinkus*, 228 Ill. 2d at 210-11. The Board's decision on a question of law is not binding on the reviewing court and, thus, the court's review is independent and not deferential. *Id*. at 210. The court, however, will make an exception and grant some deference to the Board's expertise where it resolved a genuine ambiguity in a statute or regulation it is charged with administering. *Department of Central Management Services/The Department of Public Health v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110013, ¶ 51.

¶ 45    Cases that involve mixed questions of law and fact are subject to a clearly erroneous standard of review. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). A mixed question of law and fact typically arises when "the historical facts are not in dispute and the issue is whether the established facts satisfy the statutory standard." *Village of Hazel Crest v. Illinois Labor Relations Board*, 385 Ill. App. 3d 109, 113 (2008). An agency's decision is clearly erroneous "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service*, 198 Ill. 2d at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 98 (2007).

---

[2]Given the partial disagreement between the Board and the ALJ, it should be noted this court's review is of the decision rendered by the Board, not that of the ALJ. *International Brotherhood of Electrical Workers, Local 21 v. Illinois Labor Relations Board*, 2011 IL App (1st) 101671, ¶ 33.

¶ 46    In this case, this court is asked to review the Board's application of the undisputed facts to section 3(r) of the Act, defining the term "supervisor," which is a mixed question of law and fact. *Village of Hazel Crest*, 385 Ill. App. 3d at 113. Accordingly, the Board's decision will be reversed only if this court is left with the definite and firm conviction that a mistake has been committed. *AFM Messenger Service*, 198 Ill. 2d at 395.

¶ 47              The Status of Supervising Investigators Under Section 3(r) of the Act

¶ 48    The Act provides a comprehensive system of collective bargaining for those public employees and employers who fall within its scope. *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 505 (1990). Our supreme court has explained:

> "Supervisors are excluded from bargaining units under the Act to avoid the conflict of interest which arises when supervisors, who must apply the employer's policies to subordinates, are subject to control by the same union representing those subordinates." *City of Freeport*, 135 Ill. 2d at 517.

As the party seeking to exclude the employees from the Union, IPRA had the burden of proving, by a preponderance of the evidence, the employees were "supervisors." *Department of Central Management Services (State Police) v. Illinois Labor Relations Board, State Panel*, 382 Ill. App. 3d 208, 220-21 (2008).

¶ 49    The term "supervisor" is defined in section 3(r) of the Act as follows:

> "[A]n employee whose principal work is substantially different from that of his or her subordinates and who has authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, direct, reward, or discipline employees, to adjust their grievances, or to effectively recommend any of those actions, if the exercise of that authority is not of a merely routine or clerical nature, but requires the consistent use of independent judgment. Except with respect to police employment, the term 'supervisor' includes only those individuals who devote a preponderance of their employment time to exercising that authority ***." 5 ILCS 315/3(r) (West 2010).

Thus, employees are supervisors pursuant to the Act if they: (1) perform principal work that is substantially different from that of their subordinates; (2) have authority in the interest of the employer to perform some or all of the 11 enumerated supervisory functions; (3) consistently use independent judgment in performing the enumerated functions; and (4) devote a preponderance of their time to performing those functions. *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 515 (1992).

¶ 50    In this case, the Union does not argue the principal work of supervising investigators is not substantially different from that of their subordinates. Rather, the Union contends there are no indicia of supervisory authority in this case, primarily arguing supervising investigators do not "direct" employees within the meaning of the Act. This issue is critical, given the reasoning of the Board's decision and Rosenzweig's testimony that supervising investigators spend 95.5% of their time assigning and supervising cases. Generally, one indicium of supervisory authority accompanied by independent judgment is sufficient to indicate supervisory status. *Id.* at 516.

¶ 51    This court, however, has ruled that to "direct" employees within the meaning of the Act, supervisors also must have the authority to affect the employees' terms and conditions of employment. *Department of Central Management Services/Department of Public Health v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110209, ¶ 27. "Overseeing functions in areas likely to fall within the scope of union representation, such as wages, discipline, transfer, promotion, hiring, or other working conditions, is insufficient to constitute supervisory 'direction' within the meaning of the Act." *Id*. The alleged supervisor must have both the authority to make operational decisions *and* exercise significant discretionary authority that impacts his subordinates' employment status in areas most likely to fall within their terms and conditions of employment. *Id*. ¶ 28. Accordingly, an analysis of whether supervising investigators are supervisory under the Act requires a consideration not only of whether they "direct" their employees (or make effective recommendations in this arena), but also whether they exercise significant discretionary authority that affects wages, discipline and other working conditions. This court addresses both elements in turn.

¶ 52    An employee exercises the authority to direct subordinates where he or she approves overtime and personal holiday requests, reviews subordinates' reports, assigns subordinates to jobs or teams, and occasionally takes command of the work. See *City of Freeport*, 135 Ill. 2d at 513 (involving police lieutenants and sergeants). "This court has found the 'authority to independently *assign and monitor work*, evaluate employees, and approve time off for *** subordinates' 'clearly satisfies the requirement under the Act that a supervisor "direct" his subordinates with independent judgment.' (Emphasis in original.)" *Department of Central Management Services/Department of Transportation v. Illinois Labor Relations Board, State Panel*, 2013 IL App (4th) 110825, ¶ 49 (quoting *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 090966, ¶ 201). Where the assignment of work merely balances the workload among employees, however, the assignment does not involve the use of independent judgment. *Chief Judge of the Circuit Court*, 153 Ill. 2d at 518. The independent monitoring of subordinates' work includes the review of subordinates' reports for clarity, thoroughness and accuracy, as well as the review of the findings and recommendations of the reports. *Department of Central Management Services*, 2012 IL App (4th) 110013, ¶¶ 61-69.

¶ 53    In this case, the record sets forth supervising investigators assign cases to their subordinates. The assignment of work is not a simple balancing of caseloads. Instead, supervising investigators also assign work based on the complexity and newsworthiness of the case, the experience of the investigators and the need to develop particular skills by investigators. Although the ALJ or the Board did not specifically rule on the authority to assign work in analyzing whether supervising investigators "direct" under the Act, such evidence buttresses the Board's decision in this case.

¶ 54    The Union, like the Board's decision, does not specifically address the authority of supervising investigators regarding their subordinates' work schedules. The ALJ made findings of fact on the issue and concluded supervising investigators lacked "wide discretion in granting overtime or sick time or the like." The discretion exercised by supervising investigators appears to be more limited than that exercised by the police personnel in *City of Freeport* or the field technicians in *Department of Central Management*

-10-

*Services/Department of Transportation*. Nevertheless, the evidence that supervising investigators possess limited discretion in this area lends some support to the Board's decision.

¶ 55     The Board found the evidence clearly establishes the supervising investigators spend most of their time instructing their subordinates and reviewing their reports and investigations. The Board also found the supervising investigators' instructions are unchallenged in the vast majority of cases. Thus, the Board concluded the supervising investigators' instructions were direction, rather than mere suggestions or advice.

¶ 56     The Union compares supervising investigators' case review to "mere proofreading" or quality control on an assembly line. The Union also compares case review to the direction which lieutenants give to firefighters at a fire scene, which is derived from their superior skill, experience and technical expertise, and thus does not require the use of independent judgment in the interest of the employer as required by the Act. See *City of Freeport*, 135 Ill. 2d at 532. Rosenzweig, however, testified supervising investigators give their investigators feedback and written notes during an investigation, identifying issues an investigator needs to address. Supervising investigators also ensure investigators follow through in obtaining supplemental police reports, forensic test results and any other supplemental information. Freeman, a witness for the Union, testified he ensures all of the proper investigatory steps have been taken and that the investigator's findings match the facts developed in the investigation. Although the Board did not focus on the nature of these activities, the record indicates the work involves more than proofreading or mere quality control, though the work includes both of these elements. See *Department of Central Management Services*, 2012 IL App (4th) 110013, ¶¶ 61-69. Moreover, as case law classifies the work involved in case review as involving independent judgment (*id*.), the Board did not err in concluding supervising investigators employed independent judgment and we need not consider whether such work is comparable to the direction given firefighters by their lieutenants, as important as that direction is.

¶ 57     The Union argues supervising investigators have little real input into the process because the overwhelming majority of cases are either closed for a lack of affidavit or closed with a decision not sustaining the complaint. In the first category of cases, however, the record shows the supervising investigator decides whether the investigator put forth sufficient effort to obtain an affidavit. In the second category of cases, the record reveals supervising investigators provide their investigators feedback and written notes during an investigation, identifying issues an investigator needs to address. Supervising investigators also ensure that investigators follow through in obtaining supplemental information and evidence.

¶ 58     The Union claims the IPRA culture "encourages [i]nvestigators, at their whim, to openly flout the [s]upervising [i]nvestigators' requests." The Union relies on Tillman's testimony. That testimony, however, indicates in the few cases per month in which a supervising investigator and investigator disagree about the need for additional evidence, the investigator will seek out a superior or a "Grade 3 investigator" (*i.e.*, another employee subordinate to the supervising investigator), to attempt to convince the supervising investigator that no further evidence is necessary. The infrequency of disagreements itself is evidence that even where supervising investigators are not directing particular action by subordinates, they are

providing effective recommendations of their subordinates' actions, insofar as the supervising investigators' decisions on cases are almost always adopted. See *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 766, 777 (2010) (discussing effective recommendations of discipline).

¶ 59 In sum, the record demonstrates supervising investigators employ independent judgment in assigning work to their subordinates and monitoring that work, but exercise limited discretion in scheduling time off for the subordinates. Supervising investigators have authority to approve an occasional day off, but annual vacation scheduling falls within the authority of higher-level officials. The record also indicates assigning and monitoring the investigators' work are the most important and predominant tasks performed by supervising investigators. Case law establishes these tasks are considered "direction" within the meaning of the Act. *Department of Central Management Services/Department of Transportation*, 2013 IL App (4th) 110825, ¶ 49; *Department of Central Management Services*, 2012 IL App (4th) 110013, ¶¶ 61-69. Thus, this court is not left with the firm and definite conviction that the Board's conclusion that supervising investigators "direct" employees under the Act is mistaken. Accordingly, we must conclude the Board's conclusion on this point is not clearly erroneous.

¶ 60 The remaining question is whether supervising investigators also exercise authority to affect the terms of the subordinates' employment in areas likely to fall within the scope of union representation. If supervising investigators spend the preponderance of their time assigning and monitoring their subordinates' work, the key inquiry on the remaining question is whether they use independent judgment in exercising such authority, not the amount of time or number of times the authority is exercised. See *City of Freeport*, 135 Ill. 2d at 521; *Department of Central Management Services*, 2012 IL App (4th) 110209, ¶ 42.

¶ 61 For example, the Union asserts supervising investigators have no authority to reward subordinates because superiors make suggestions regarding the employee evaluations. The fact that a superior may be involved in the decision-making process does not exclude the supervising investigators from supervisory status under the Act. See *Department of Central Management Services*, 2011 IL App (4th) 090966, ¶¶ 192-93. Rosenzweig testified she has never rejected a supervising investigator's performance evaluation. Thus, the supervising investigators' evaluations are at least effective recommendations. See *Department of Central Management Services/Illinois Commerce Comm'n*, 406 Ill. App. 3d at 777. Moreover, the record indicates the AFSCME collective bargaining agreement requires performance evaluations be considered when a subordinate employee applies for a promotion. Thus, the Board's conclusion that supervising investigators exercise authority to reward their subordinates through evaluations affecting their subordinates' wages and promotions is not clearly erroneous.

¶ 62 The Union, relying upon *American Federation of State, County & Municipal Employees, Council 31*, 16 PERI ¶ 3009 (ILLRB 1999) (hereinafter, *County of Cook*), also asserts supervising investigators have no authority to discipline subordinates, arguing they do not consistently exercise discretion regarding discipline and the discretion to report misconduct does not rise to the level of supervisory authority. In *County of Cook*, however, the alleged

supervisors had no role in the imposition of discipline, and could not even suggest the penalty he or she believed was appropriate under the circumstances. In this case, the record indicates supervising investigators have the authority to impose discipline and these decisions are generally final and unreviewable. Thus, the supervising investigators' evaluations are at least effective recommendations. *Department of Central Management Services/Illinois Commerce Comm'n*, 406 Ill. App. 3d at 777. Tillman testified that she has never issued an oral or written reprimand, or a suspension, but this does not mean she lacks the authority to do so, or that supervising investigators as a class do not consistently impose discipline. *City of Freeport*, 135 Ill. 2d at 521. Moreover, on this point, Rosenzweig identified a variety of notices of progressive discipline previously imposed by supervising investigators.

¶ 63    Lastly, the Union asserts supervising investigators have no authority to adjust employee grievances. The ALJ found supervising investigators are to receive and respond to grievances in the first instance pursuant to the AFSCME collective bargaining agreement covering the subordinates. The ALJ also found supervising investigators have the apparent authority and on almost all occasions the actual authority to resolve grievances. The Board agreed with this aspect of the ALJ's decision. The Union, relying upon *American Federation of State, County & Municipal Employees, Council 31*, 23 PERI ¶ 38 (ILRB State Panel 2007) (hereinafter, *Departments of Central Management Services & State Police*), contends the Board erred where Tillman and Freeman testified they never responded to a grievance and were not trained to respond to them. In *Departments of Central Management Services & State Police*, however, the ALJ addressed the grievance issue, but the Board did not and declined to accept the ALJ's recommended decision. *Id*. Moreover, the testimony does not establish supervising investigators lack the authority or as a class do not consistently exercise it. See *City of Freeport*, 135 Ill. 2d at 521. The record indicates Rosenzweig instructed supervising investigators to provide grievances to IPRA's director of administration, but more recent responses to grievances bear only the signatures of supervising investigators. On this particular issue, this court may be less persuaded than the ALJ and the Board were by this record, but we are not left with the firm and definite conviction the Board was mistaken, and do not find this point crucial to the overall determination in this case.

¶ 64    Examining the record as a whole, this court is not left with the definite and firm conviction that the Board was mistaken in concluding supervising investigators not only direct their subordinates, but also exercise significant discretionary authority that affects wages, discipline and other working conditions likely to fall within the scope of union representation. Accordingly, the Board's decision was not clearly erroneous. Given our disposition of this issue, we need not reach the Union's contention that supervising investigators are not managerial employees under the Act.

¶ 65                                CONCLUSION

¶ 66    For all of the aforementioned reasons, we affirm the Board's decision.

¶ 67    Affirmed.

-13-